**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

JOANNA A., individually and
on behalf of her
minor child J.A.,

        Plaintiffs,

   V.

MONROE TOWNSHIP BOARD OF
EDUCATION; NEW JERSEY
DEPARTMENT OF EDUCATION;
KEVIN DEHMER, INTERIM
COMMISSIONER OF EDUCATION;
NEW JERSEY OFFICE OF
ADMINISTRATIVE LAW; ELLEN
S. BASS, CHIEF
ADMINISTRATIVE LAW JUDGE;
JEFFREY R. WILSON,
ADMINISTRATIVE LAW JUDGE;
JOHN S. KENNEDY,
ADMINISTRATIVE LAW JUDGE;
CATHERINE A. TUOHY,
ADMINISTRATIVE LAW JUDGE;
AND DOES 1 – 250 SIMILARLY
SITUATED ADMINISTRATIVE LAW
JUDGES,

        Defendants.

No. 1:21-cv-06283-NLH-MJS

**OPINION**

---

ROBERT CRAIG THURSTON
THURSTON LAW OFFICES LLC
100 SPRINGDALE ROAD A3
PMB 287
CHERRY HILL, NJ 08003

   *Counsel for Plaintiffs.*

LAURIE LEE FICHERA
STATE OF NEW JERSEY
OFFICE OF THE ATTORNEY GENERAL
25 MARKET STREET - P.O. BOX 112
TRENTON, NJ 08625

    *Counsel for the State Defendants.*

WILLIAM S. DONIO
YOLANDA NICOLE MELVILLE
COOPER LEVENSON, P.A.
1125 ATLANTIC AVENUE, THIRD FLOOR
ATLANTIC CITY, NJ 08401-4891

    *Counsel for Monroe Township Board of Education.*


**HILLMAN**, **District Judge**

    Currently before the Court is the State Defendants'[1] Motion to Dismiss Plaintiffs'[2] Complaint (ECF 33).  For the reasons that follow, the State Defendants' motion will be granted in part and denied in part.

**RELEVANT FACTUAL AND PROCEDURAL HISTORY**

    For purposes of this motion to dismiss, the Court takes the facts alleged in the complaint as true and will only recount those salient to the instant motion.  J.A. is a disabled child who was receiving special education services from Monroe

---

[1] The State Defendants the New Jersey Department of Education ("NJDOE"), the Commissioner of Education, the New Jersey Office of Administrative Law ("NJOAL"), and the Administrative Law Judges ("ALJ") that presided over the underlying due process matters: ALJ Ellen Bass, ALJ Jeffrey R. Wilson, ALJ John S. Kennedy, ALJ Catherine A. Tuohy, as well as DOEs 1-250 "Similarly Situated" ALJs.  (See ECF 33).

[2] Plaintiffs are Joanna A., individually and on behalf of her minor child J.A. (See generally ECF 1).

Township Board of Education ("MTBOE").  (ECF 1 at 51).
Plaintiffs allege that J.A. was diagnosed with Autism and
apraxia when she was a toddler.  (Id.)  Despite submitting the
opinions of more than one medical practitioner who confirmed
J.A.'s diagnoses and recommended services, MTBOE declined to
provide them during J.A.'s kindergarten and first grade years at
school.[3]  (Id. at 51-52). Later, in 2015, Plaintiffs took J.A.
for a further medical evaluation where it was determined that
she had severe auditory processing disorder.  (Id. at 53).
MTBOE accepted the diagnosis but refused to provide services.
(Id. at 54).

Plaintiffs alleged that MTBOE did prepare an Individualized
Educational Program ("IEP") for J.A.'s third grade year but that
it was subpar in terms of J.A.'s education needs.[4]  (Id. at 55-
57).  J.A.'s mother accepted the plan because she felt that
there was no other option.  (See id. at 57).  A further IEP
session was held that fall, and though a revised education plan
was established, J.A.'s mother felt that her input was not
valued.  (Id. at 59-60).

---

[3] Related to these diagnoses during this time, Plaintiffs filed
two due process complaints against MTBOE.  (Id. at 52).  One
settled and Plaintiffs lost the other case.  (Id.)  That second
case has been appealed and is currently before this Court.  (See
Civil No. 1:20-cv-09498-NLH-MJS).

[4] The complaint notes that there might have been another IEP
meeting during the winter of the school year.  (Id. at 63).

The complaint also alleges that that year J.A.'s mother had been visiting the school in order to observe J.A. and MTBOE informed her that her visits would be limited.  (Id. at 61).  At the next IEP meeting, J.A. was provided with a plan for the next school year, the fourth grade, that included even fewer services than the prior year.[5]  Because of the lack of services, Plaintiffs ultimately switched J.A. to homebound schooling, where she has been ever since.  (Id. at 76).

On May 24, 2017, Plaintiffs filed a due process complaint against MTBOE with the NJDOE.  (Id. at 77).  The case was not resolved during mediation, and it was later transferred to the OAL for a hearing.  (Id. at 78).  Plaintiffs allege that though they were entitled to a hearing within approximately ten days of that transmittal, ALJ Beaver held a settlement conference instead.  (Id. at 79).  That day was one of the OAL's "Settlement Thursdays", where the OAL would hold settlement conferences rather than hearings as required by law.  (See id.)  In addition, Plaintiffs were never told that the session with ALJ Beaver would be a settlement conference rather than a hearing when the case was transmitted from the NJDOE to the OAL.  (Id.)  Thereafter, because the parties did not settle, the

---

[5] In addition, because of a pending due process complaint, J.A. was supposed to be receiving the same services from the prior year.  The complaint pleads that J.A. did not receive those services.

4

matter was transferred to ALJ Wilson to hold a hearing, who set the hearing date for months out into the future, despite there being no adjournment request by the parties.  (Id. at 80).  In October 2017, ALJ Wilson executed a pre-hearing order which advised the parties that if discovery materials were not exchanged at least five days prior to the hearing, those materials would be excluded upon application of a party (the "Five Day Exchange Rule").  (Id. at 81).

Plaintiffs allege that the hearing was not scheduled until January 8, 2018, 203 days after the period for mediation at the NJDOE had ended and the case was to be transferred to the OAL. (Id. at 82).  Further, Plaintiffs sought to amend their due process complaint upon retaining counsel in November 2017, but ALJ Wilson did not rule on that motion, which was ultimately denied on May 1, 2018.  (Id. at 86).  Plaintiffs allege that they sent a letter that morning asking about the status of the motion and that ALJ Wilson issued an order denying that motion later that day in retaliation for pointing out his violation of the timelines for resolving due process complaints.  (Id.)

Plaintiffs filed another due process complaint on May 22, 2018, alleging further misconduct by MTBOE since the last one had been filed.  (Id.)  ALJ Wilson scheduled a hearing on the first due process complaint on June 11, 2018.  However, because Plaintiffs in the interim had filed a putative class action

naming him as a defendant, ALJ Wilson recused himself and was replaced by ALJ Kennedy.  Both due process complaints were consolidated over the summer of 2018 and set for a hearing on October 1, 2018.[6]  Plaintiffs alleged that MTBOE produced materials only four days before the hearing in violation of the Five Day Exchange Rule. (Id. at 90).  Plaintiffs moved to exclude that evidence but ALJ Kennedy denied the motion.  (Id. at 91).

Plaintiffs filed an interlocutory appeal which was before the undersigned and which the undersigned denied without prejudice pending the completion of the hearing.  (Id. at 92).  Before the matter was remanded to the OAL, Plaintiffs learned of ex parte communications between ALJ Kennedy and MTBOE and demanded that ALJ Kennedy recuse himself.  (Id. at 93).  ALJ Kennedy did so and was replaced by ALJ Tuohy in July 2020.  (Id.)  ALJ Tuohy then conducted another status conference rather than a hearing.  (Id. at 94).  ALJ Tuohy did not hold a hearing until the fall and then issued her opinion on February 22, 2021.  (Id. at 97).

Plaintiffs originally filed this case before this Court on May 23, 2021.  (Id.)  The complaint contains counts against MTBOE and counts against some or all of the State Defendants.

---

[6] The second due process complaint was originally assigned to ALJ Bass when it was transferred from the NJDOE to the OAL.  (Id. at 88).

The court will now recount the Counts that name the State
Defendants as those are the ones relevant to this motion to
dismiss.  They are: Count II (legal error in the first due
process case against the State Defendants), Count III (systemic
violation of the ten day peremptory hearing date against the
State Defendants), Count IV (systemic violation of the Five Day
Exchange Rule by the State Defendants), Count V (systemic
violation of the adjournment rule by the State Defendants);
Count VI (systemic violation of the 30 day resolution period by
the State Defendants); Count VII (systemic violation of the
access to records procedural safeguard by the State Defendants);
Count VIII (systemic violation of discovery rules by the State
Defendants); Count IX (systemic violation of the rules of
evidence by the State Defendants); Count X (systemic violation
of the hearing officer qualifications by the State Defendants);
Count XI (systemic violation of the independence of the
adjudicating body of special education disputes by the State
Defendants); Count XII (systemic violation of the 45 Day Rule by
the State Defendants); Count XIII (federal preemption against
the State Defendants); Count XVII (violation of § 504 of the
Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq., by All
Defendants except MTBOE and Doe ALJs 1-250); Count XVIII
(violation of Title II of the Americans with Disabilities Act of
1990, 42 U.S.C. § 12101 et seq. (the "ADA") by All Defendants

7

except MTBOE and Doe ALJs 1-250); Count IXX (systemic civil

rights violations under 42 U.S.C.§ 1983 by the State

Defendants); and Count XX (systemic malicious abuse of process

by the State Defendants).  Instead of attacking the complaint

count by count, the State Defendants organize their motion to

dismiss around certain legal theories and arguments.  Thus, the

Court will address the motion to dismiss by proceeding through

the State Defendants' arguments rather than going count by

count.

**BACKGROUND**

I.   <u>The IDEA</u>

Though Plaintiffs state claims under laws other than the

IDEA, the thrust of their complaint revolves around the

defendant's failure to honor their responsibilities under the

IDEA.  Therefore, the Court will provide some color on the IDEA

as a statutory and regulatory scheme.  Congress enacted the IDEA

to, among other things, ensure "the rights of children with

disabilities and parents of such children are protected[.]"  20

U.S.C. § 1400(d)(1)(A)-(B).  The IDEA requires that every child

with a disability receive a free appropriate public education (a

"FAPE") from their public school if that school receives federal

funding under the IDEA.  <u>Id.</u> at § 1412(a)(1)(A); 34 C.F.R. §

300.101(a).  The term "free appropriate public education" means

the provision of "special education and related services" that

8

meet certain criteria.  20 U.S.C. § 1401(9).  The IDEA also
guarantees parents of disabled children a right to participate
in the educational programming offered to their children.

To ensure that public schools adequately provide a FAPE and
that the rights of disabled students and their parents are not
infringed, Congress enacted various "procedural safeguards" that
participating public schools must comply with.  Id. at §
1412(6)(A); id. at § 1415(a).  One such procedural safeguard
provides standards for adjudicating disputes about whether a
school has adequately provided a FAPE.  Per Congress'
requirements, these disputes begin with the filing of a "due
process petition" or "due process complaint."  Either the public
school or the child may file a due process complaint, and that
complaint may seek relief with respect to "any matter relating
to the identification, evaluation, or educational placement of
the child, or the provision of a free appropriate public
education to such child."  Id. at § 1415(b)(6).

The IDEA contemplates that it is the State Educational
Agency that is responsible for making sure that there are fair
and impartial procedures in place to handle any due process
petition.  Id. at §1415 (f)(1)(A) ("Whenever a complaint has
been received under subsection (b)(6) or (k), the parents or the
local educational agency involved in such complaint shall have
an opportunity for an impartial due process hearing, which shall

9

be conducted by the State educational agency or by the local
educational agency, as determined by State law or by the State
educational agency."); id. at §1415(e)(1) ("Any State
educational agency or local educational agency that receives
assistance under this subchapter shall ensure that procedures
are established and implemented to allow parties to disputes
involving any matter.").

Once a due process complaint has been filed, Congress has
set strict deadlines by which certain events must occur.  See
Id. at § 1415(f)(1)(B)(ii) (referencing timelines "applicable
[to] a due process hearing"); 34 C.F.R. § 300.515(a) (setting
forth a strict timeframe for due process petition resolution);
N.J.A.C. 6A:14-2.7(j) (same).  These procedures are central to
the instant matter.  Beginning with the date the due process
complaint is filed, the parties have thirty days within which to
settle or otherwise resolve the dispute to the satisfaction of
the parent and child.  See 20 U.S.C. § 1415(f)(1)(B); 34 C.F.R.
§ 300.510(b).  This period is referred to as the "resolution
period."

If the case is not resolved during the resolution period,
it may proceed to a hearing.  Congress has called these "due
process hearings."  In New Jersey, "[a] due process hearing is
an administrative hearing conducted by an administrative law
judge" in the OAL.  N.J.A.C. 6A:14-2.7(a).  "If the local

10

educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all of the applicable timelines for a due process hearing under this subchapter shall commence"  20 U.S.C. § 1415(f)(1)(B)(ii); 34 C.F.R. § 300.510(b); see N.J.A.C. 6A:14-2.7(j) ("A final decision shall be rendered by the administrative law judge . . . after the conclusion of the resolution period").

Once the 30-day resolution period ends, federal regulations require that due process petitions be decided by hearing officers within 45 days, unless either party requests specific adjournments.  34 C.F.R. § 300.515(a) (states receiving federal funding "must ensure that not later than 45 days after the expiration of the 30 day period under § 300.510(b) . . . (1) A final decision is reached in the hearing; and (2) A copy of the decision is mailed to each of the parties.").  New Jersey's Administrative Code contains a similar requirement.  N.J.A.C. 6A:14-2.7(j) ("[a] final decision shall be rendered by the administrative law judge not later than 45 calendar days after the conclusion of the resolution period[.]")

Both federal and New Jersey State law permit "specific adjournments" to be granted "at the request of either party" which will effectively toll the 45-day period within which a decision must be entered.  See N.J.A.C. 6A:14-2.7(j) (45-day

period may only be extended if "specific adjournments are
granted by the administrative law judge in response to requests
by either party to the dispute"); 34 C.F.R. § 300.515(c) ("[a]
hearing or reviewing officer may grant specific extensions of
time beyond the periods set out in paragraphs (a) and (b) of
this section at the request of either party."). No other delays
are contemplated. Therefore, if no specific adjournments are
requested by the parties, a final decision must be rendered
within 45 days after the end of the 30-day resolution period.
34 C.F.R. § 300.515(a); N.J.A.C. 6A:14-2.7(j). The Court refers
to this requirement as the "45 Day Rule." With that overview,
the Court turns to Plaintiffs' allegations.

**DISCUSSION**

I.  <u>Subject Matter Jurisdiction</u>

   This Court exercises subject matter jurisdiction pursuant
to 28 U.S.C. § 1331 and § 1367.

II.  <u>Standard of Review</u>

   When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
<u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005). It is well
settled that a pleading is sufficient if it contains "a short

12

and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

13

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented

14

to the court, and the court does not exclude those matters, a
Rule 12(b)(6) motion will be treated as a summary judgment
motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

Rule 12(b)(1) governs the State Defendants' motion to the
extent it challenges Plaintiffs' action on standing and immunity
grounds.  "A challenge to subject matter jurisdiction under Rule
12(b)(1) may be either a facial or a factual attack."  Davis v.
Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  "The former
challenges subject matter jurisdiction without disputing the
facts alleged in the complaint, and it requires the court to
'consider the allegations of the complaint as true.'"  Id.
(quoting Petruska v. Gannon Univ., 462 F.3d 294, 302 n.3 (3d
Cir. 2006)).  A factual challenge attacks the allegations
underlying the complaint's assertion of jurisdiction, "either
through the filing of an answer or 'otherwise present[ing]
competing facts.'"  Id. (quoting Constitution Party of Pa. v.
Aichele, 757 F.3d 347, 358 (3d Cir. 2014)).

The Court of Appeals for the Third Circuit has held that
motions to dismiss for lack of standing are best understood as
facial attacks.  In re Schering Plough Corp. Intron/Temodar
Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)
("Defendants' Rule 12(b)(1) motions are properly understood as
facial attacks because they contend that the [a]mended
[c]omplaints lack sufficient factual allegations to establish

15

standing."). In assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1), courts must apply the familiar 12(b)(6) standard. Id. ("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim"); see also Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 73 (3d Cir. 2011) ("A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim."). Guided by In re Schering Plough and Baldwin, the Court finds it must apply the 12(b)(6) standard to Defendants' jurisdictional arguments.

    I.  Analysis

        a. Failure to Show Violation of the IDEA or New Jersey
           Regulations by the State Defendants.

    The State Defendants move to dismiss the claims that revolve around their alleged violation of the IDEA on the grounds that Plaintiffs have failed to state claims. The State Defendants argue that they have sufficient procedures in place to comply with the IDEA and Plaintiffs' complaint is really just venting their discontent with the ALJ's decision. With respect to Counts II-IX and XII, they argue that Plaintiffs have only stated conclusory claims of violation of the IDEA and New Jersey Regulations. In combatting Plaintiffs' claims, they argue that

16

there is no rule that a due process hearing must be conducted within ten days of a case's transmittal from the NJDOE to the OAL and that settlement is encouraged under the IDEA.

It may be true that settlement may be encouraged under the IDEA, but in so suggesting the State Defendants skirt the fact that the New Jersey Regulations do provide that the first hearing should be approximately ten days after transmittal. N.J.A.C. § 1:6A-9.1(a) ("Upon unsuccessful conclusion of the resolution process or mediation, as provided in N.J.A.C. 6A:14-2.7, the representative of the Office of Special Education Programs shall immediately contact the Clerk of the Office of Administrative Law and the Clerk shall assign a peremptory hearing date. The hearing date shall, to the greatest extent possible, be convenient to all parties but shall be approximately 10 days from the date of the scheduling call."). Plaintiffs allege that they did not receive a hearing anywhere close to ten days after the transmittal of their case to the OAL — instead they received a settlement conference.  That is more than enough to state a plausible claim at this juncture.

Similarly, the State Defendant's attack on Count V alleging a violation of the adjournment rule completely misses the fact that the IDEA only allows adjournments at the request or consent of the parties and Plaintiffs allege that there was no request or consent to some of the lengthy adjournments.  34 C.F.R. §

17

300.515(a); (ECF 1 at 123-26).

In the same vein, Plaintiffs have adequately pled in Count IV that the procedures provided by the State Defendants did not adequately protect their discovery rights by not requiring MTBOE to provide discovery at least five days before the hearing.  The State Defendants are right that there is no rule or regulation that specifically states that discovery must be exchanged five days before the hearing without exceptions.  But in so arguing they miss the forest for the trees and the plain letter of the applicable regulations.  The IDEA makes clear that discovery should be exchanged freely and without delay before a hearing and that such disclosure occur not closer that five days before the hearing date.  See 20 U.S.C. § 1415(f)(2)(A) ("Not less than 5 business days prior to a hearing conducted pursuant to paragraph (1), each party shall disclose to all other parties all evaluations completed by that date, and recommendations based on the offering party's evaluations, that the party intends to use at the hearing."); id. at § 1415(b)(1) (the procedures put in place by the state must provide "[a]n opportunity for the parents of a child with a disability to examine all records relating to such child[.]"); 34 C.F.R. § 300.613 ("The agency must comply with a [discovery] request without unnecessary delay[.]")

New Jersey regulations mirror the federal regulations as

they should.  See N.J.A.C. § 1:6A-10.1(c) ("Upon application of
a party, the judge shall exclude any evidence at hearing that
has not been disclosed to that party at least five business days
before the hearing, unless the judge determines that the
evidence could not reasonably have been disclosed within that
time.").  Plaintiffs specifically identity an occasion where
MTBOE provided discovery less than five days before a scheduled
hearing date, they asked for the discovery to be excluded, and
the ALJ improperly did not do so.  (ECF 1 at 90-91).

More globally, the Court holds that Plaintiffs have
adequately pleaded that the State Defendants did not enforce the
rules on access to records (Count VII).  The State Defendants
characterize those allegations as conclusory because Plaintiffs
make allegations on "information and belief."  "[T]he Third
Circuit has [] recognized that pleading facts upon information
and belief is permitted where the factual information at issue
is within the Defendants' exclusive possession and control."
Wood v. State of New Jersey, 2016 WL 4544337, at *5 n.5 (D.N.J.
Aug. 31, 2016) (citing In re Rockefeller Ctr. Props., Inc. Sec.
Litig., 311 F.3d 198, 216 (3d Cir. 2002)).  Here, Plaintiffs
plead globally regarding the State Defendant's general practices
that they "rarely if ever enforce a parents' rights to access
their child's records even though it states that right
explicitly in the due process case transmittal documents."  (ECF

19

1 at 134).  Plaintiffs would not have facts to separately plead

that allegation at this stage of litigation.  Further, given

that Plaintiffs specifically alleged that one of the ALJs

engaged in improper ex parte communications with MTBOE, it is

not far-fetched to think that the State Defendants were not

enforcing the rules on access to records.  (See id. at 93).  In

addition, Plaintiffs don't solely base their claim on denial of

access to records on statements pled on information and belief —

they identify specific conduct by MTBOE and the State Defendants

that underlies their claim.  (Id. at 133-34 (stating "MTBOE

violated Plaintiffs' right to access J.A.'s records in

sufficient time prior to a due process hearing as guaranteed by

IDEA and therefore violated the referenced Procedural Safeguard"

and noting that the State Defendants did not remedy that

violation)).

    In addition, Plaintiffs have adequately pled that the State

Defendants failed to ensure the independence of the OAL (Count

XI) and that ALJs were adequately trained (Count X).  The IDEA

requires both that the due process hearing be conducted by an

impartial hearing officer and that the state receiving federal

funds under the IDEA put in place procedures to make sure that a

fair hearing is conducted.  20 U.S.C. § 1415(f)(3); 34 C.F.R. §

300.511; and N.J.A.C. § 6A:14-2.7(k).

    Plaintiffs have alleged that the OAL is so emmeshed in the

20

NJDOE that they have not been able to get a fair and impartial hearing.[7]  They also have alleged that the training of the ALJs assigned to due process hearings is so lacking that it violates the requirement that the hearings be conducted by an ALJ with requisite skill and knowledge so as to be capable of rendering a timely decision.  See 34 C.F.R. § 300.515(a) (states receiving federal funding "must ensure that not later than 45 days after the expiration of the 30 day period under § 300.510(b) . . . (1) A final decision is reached in the hearing; and (2) A copy of the decision is mailed to each of the parties.").

The NJDOE has the overarching responsibility to ensure that the procedures for due process hearings run smoothly without actually adjudicating disputes itself.  The IDEA is organized such that the ALJs who conduct the due process hearings may not be NJDOE employees.  20 U.S.C. §1415(f)(3)(A)(i).  But that very same statute makes clear that it is the NJDOE who is responsible for the infrastructure that creates such impartial due process hearings.  Id. at §1415(f)(1)(A) ("Whenever a complaint has been received under subsection (b)(6) or (k), the parents or the

---

[7] The State Defendants argue that the argument that ALJs receive their salaries from the NJDOE is not enough to state a claim that the OAL is not sufficiently independent.  (ECF 33 at 12).  Plaintiffs' allegations are more complex in that they claim the prior experience of many ALJs makes them beholden to the NJDOE and that, in addition to their salaries, the OAL is so financially intertwined with the NJDOE that there is a conflict of interest.  (ECF 1 at 155-57).  Plaintiffs cite statistics on the outcomes of cases to bolster their claim.  (Id.)

local educational agency involved in such complaint shall have
an opportunity for an impartial due process hearing, which shall
be conducted by the State educational agency or by the local
educational agency, as determined by State law or by the State
educational agency.")  Plaintiffs have outlined the training
deficiencies of the ALJs and the ways that the OAL and the NJDOE
are intertwined with sufficient facts to survive a motion to
dismiss. (ECF 1 at 44 ("Upon information and belief, ALJs do not
receive and NJDOE or the OAL provides adequate training or
instruction on IDEA or its regulations or the New Jersey
regulations, specifically the rigors of the 10 Day Peremptory
Hearing Date, the Five-Day Exchange Rule, and the 45 Day Rule,
and therefore do not meet IDEA's requirements for hearing
officers."); id. at 155 ("Since the budget and salaries of NJDOE
and OAL employees are subparts of and determined by the larger
budget of the executive branch, they are beholden to the same
pot of money. This creates a personal and/or professional
interest that conflicts with the ALJ's objectivity in special
education due process hearings."))  The Court renders no opinion
as to whether these allegations will ultimately be meritorious,
only that they are sufficiently pled to survive a motion to
dismiss.

    The State Defendants also argue that Plaintiffs have not

shown a systemic violation of the IDEA.[8]  The Court disagrees.
First, the State Defendants seem to be overstating the pleading
standard, arguing that Plaintiffs must "demonstrate" the
veracity their claims at this time.  (ECF 33 at 19).  Plaintiffs
need only state a plausible claim.  Malleus, 641 F.3d at 563.
Second, to the extent that the State Defendants are suggesting
that an individual plaintiff cannot prove a systemic violation,
that argument misstates caselaw and fails to understand the
scope of Plaintiffs' allegations. Reinholdson v. Minnesota, 346
F.3d 847, 851 (8th Cir. 2003) ("[T]rials of those individual
claims may expose issues of systemic violation[.]")  The
touchstone of a systemic violation is that it cannot be remedied
by the administrative process because the issue is so pervasive.
Brach v. Newsom, 2020 WL 6036764, at *8 (C.D. Cal. Aug. 21,
2020) ("A plaintiff alleging a systemic violation is not
entitled to an exception if "it involves only a substantive
claim having to do with limited components of a program, and if
the administrative process is capable of correcting the
problem.")  Plaintiffs have alleged that the problems in how
their due process matter was handled are rooted in such
widespread deficiencies that the system in place is incapable of
remedying their concerns.  (See ECF 1at 50).  Discovery on their

---

[8] The State Defendants do not clearly tie this argument to any
given count and seem to be making a more global point about the
pleading of systemic violations.  (ECF 33 at 19-21).

individual matter certainly could bear out their concerns.

   b. Whether Plaintiffs' IDEA Claims Against State Officials
      Must be Dismissed.

   The State Defendants' argument that the counts alleging
violation of the IDEA against state officials must be dismissed
because the IDEA does not allow claims against individual
officials has some support in case law.  See Taylor v. Altoona
Area Sch. Dist., 513 F. Supp. 2d 540, 553 (W.D. Pa. 2007)
(discussing the IDEA and stating, "The United States Court of
Appeals for the Third Circuit has recognized that Congress does
not normally seek to impose liability on individuals when it
places conditions on the receipt of federal funds by entities
that employ such individuals.") (citing Emerson v. Thiel
College, 296 F.3d 184, 190 (3d Cir.2002)); R.S. v. Glen Rock Bd.
of Educ., No. 14-CV-0024 SRC, 2014 WL 7331954, at *5 (D.N.J.
Dec. 19, 2014).

   That said, this Court acknowledges that "in many
circumstances it is appropriate for a plaintiff to assert IDEA
and Rehabilitation Act claims against individuals in their
'official capacities' as school administrators, school district
personnel, or school board members[.]"  New Jersey Prot. &
Advoc., Inc. v. New Jersey Dep't of Educ., 563 F. Supp. 2d 474,
492 (D.N.J. 2008).  To be sure, the court in New Jersey Prot. &
Advoc., Inc. did dismiss the claims against the individuals

24

named in their official capacities as duplicative of the claims against the state.  Id.  It may indeed be the case that such claims will turn out to be duplicative in this matter, but at this early stage in litigation, the Court is not prepared to dismiss the claims against the individual defendants on this ground.  With the scope of the liability, if any, that may actually fall to the NJDOE and the OAL unresolved at this point in litigation, the Court will not dismiss the claims against the individual defendants as duplicative.  P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia, 2011 WL 5127850, at *12 (E.D. Pa. Oct. 31, 2011) ("While some courts have dismissed claims against individual, official capacity defendants as redundant, they have done so after satisfying themselves that the remaining entity defendant(s) were willing to take responsibility for the individual defendants' action.")

> c. Whether the ALJs Are Entitled to Judicial Immunity.

The State Defendants argue that the ALJs sued in this matter are protected by judicial immunity and the Court agrees. Plaintiffs' principal argument against this is that the law does not recognize judicial immunity for state ALJs.  (ECF 36 at 18-19).  At least one panel of the Third Circuit has recognized judicial immunity for a state official acting in the capacity of an ALJ.  Savadjian v. Caride, 827 F. App'x 199, 202 (3d Cir. 2020).  In addition, judicial immunity as a doctrine has been

understood to broadly insulate judicial officers for their acts taken in a judicial capacity.  See Kaul v. Christie, 372 F. Supp. 3d 206, 246 (D.N.J. 2019) ("Absolute judicial immunity applies to all claims, whether official-capacity or personal-capacity, that are based on judicial acts," which includes administrative law judges, and the immunity is only stripped for "nonjudicial actions" and "actions, though judicial in nature, taken in the complete absence of all jurisdiction.") (citing Mireles v. Waco, 502 U.S. 9, 12 (1991); Dongon v. Banar, 363 F. App'x 153, 155 (3d Cir. 2010); Raffinee v. Comm'r of Soc. Sec., 367 F. App'x. 379, 381 (3d Cir. 2010) (citing Butz v. Economou, 438 U.S. 478, 514 (1978)).  Accordingly, the claims against the ALJs will be dismissed with prejudice.  Thompson v. Cobham, 2012 WL 2374724, at *2 (D.N.J. 2012) (citing Gary v. Gardner, 445 F. App'x 465, 467 (3d Cir. 2011) (affirming dismissal with prejudice of action barred by judicial immunity)).

    d. Whether Plaintiffs' § 1983 Claims Must Be Dismissed.

The Court will dismiss the claims under § 1983 against the NJDOE and the OAL with prejudice[9] because they are arms of the

---

[9] District courts "should freely give leave to amend when justice so requires." Schomburg v. Dow Jones & Co., 504 F. App'x 100, 103 (3d Cir. 2012) (citing Rule 15(a)(2)) (internal alterations omitted).  "Thus, leave to amend ordinarily should be denied only when amendment would be inequitable or futile." (Id.) "[T]hese principles apply equally to pro se plaintiffs and those represented by experienced counsel."  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  "Futility 'means that the complaint,

state, and the state as not waived its Eleventh Amendment
immunity. <u>Docherty v. Cape May Cty.</u>, 2017 WL 3528979, at *4
(D.N.J. Aug. 15, 2017) ("Thus, the Court dismisses the § 1983
and NJCRA claims for damages against Lanigan in his official
capacity, based on Eleventh Amendment immunity."); <u>Rashid v.
Lanigan</u>, 2018 WL 3630130, at *10 (D.N.J. July 31, 2018)
("Plaintiffs' claims seeking declaratory relief as to, and
monetary damages from, Defendants in their official capacities
are dismissed with prejudice as barred by Eleventh Amendment
immunity[.]")

 And courts in this district have made clear that the NJDOE
and the OAL are arms of the state for Eleventh Amendment
purposes. <u>Wright v. New Jersey/Dep't of Educ.</u>, 115 F. Supp. 3d
490, 494 (D.N.J. 2015) ("The Department of Education is
considered an arm of the state government for purposes of

---

as amended, would fail to state a claim upon which relief could
be granted.'" <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 231
(3d Cir. 2011) (quoting <u>Great W. Mining & Min. Co. v. Fox
Rothschild LLP</u>, 615 F.3d 159, 175 (3d Cir. 2010)). Courts have
held amendment to be inequitable where the plaintiff already
had an opportunity to amend the complaint. <u>Lake v. Arnold</u>, 232 F.3d
360, 374 (3d Cir. 2000) ("[W]e are inclined to give the District
Court even broader discretion when, as here, the court has
already granted the requesting party an opportunity to amend its
complaint."); <u>McMahon v. Refresh Dental Mgmt., LLC</u>, 2016 WL
7212584, at *11 (W.D. Pa. Dec. 13, 2016) ("The court need not
provide endless opportunities for amendment, especially where
such opportunity already has been enjoyed.") (internal
alterations and quotation marks omitted). Here the Eleventh
Amendment serves as an absolute bar and amendment of the claims
would be futile.

determining sovereign immunity under the Eleventh Amendment."); ASAH v. New Jersey Dep't of Educ., 2017 WL 2829648, at *7 (D.N.J. June 30, 2017) ("For the purposes of the Eleventh Amendment, the DOE is an arm of the state government."); Rodrigues v. Fort Lee Bd. of Educ., 458 F. App'x 124, 127 (3d Cir. 2011) ("The Office of Administrative Law is a state agency. . . and is thus immune from suit under the Eleventh Amendment[.]").  Because Eleventh Amendment immunity bars Plaintiffs' claims against the NJDOE and the OAL, the Court will dismiss that count without leave to amend.

The Court will not, however, dismiss the claim against the Commissioner at this time.  An exception to the Eleventh Amendment is a suit against an official in their official capacity seeking prospective injunctive relief.  While not pleaded artfully, Plaintiffs' complaint essentially asks the Court to remedy the procedural problems with the dispute resolution system so that Plaintiffs can get a fair result as required under the law and perhaps bring other claims.  (See ECF 1 at 189("Defendants have denied Plaintiffs their right to timely assert other claims because of the delays and systemic flaws."))  Where there is an ongoing violation of federal law and the relief is prospective, the Court may order it.  Delaware River Joint Toll Bridge Comm'n v. Sec'y Pennsylvania Dep't of Lab. & Indus., 985 F.3d 189, 193-94 (3d Cir. 2021), cert. denied

sub nom. Berrier v. Delaware River Joint Toll Bridge Comm'n, 142
S. Ct. 109 (2021) (determining whether to grant the relief
"requires us to 'conduct a straightforward inquiry into whether
the complaint alleges an ongoing violation of federal law' and
whether it 'seeks relief properly characterized as
prospective.'") (quoting Verizon Md., Inc. v. Pub. Serv. Comm'n
of Md., 535 U.S. 635, 645 (2002)).

While the State Defendants are correct that the IDEA does
not allow Plaintiffs to use the IDEA to use § 1983 to remedy
violations of the IDEA, it does not bar suit under § 1983 based
on separate substantive rights.  First, 20 U.S.C. § 1416(*l*)
states:

> Nothing in this chapter shall be construed to restrict or
> limit the rights, procedures, and remedies available under
> the Constitution, the Americans with Disabilities Act of
> 1990, title V of the Rehabilitation Act of 1973, or other
> Federal laws protecting the rights of children with
> disabilities, except that before the filing of a civil
> action under such laws seeking relief that is also
> available under this subchapter, the procedures under
> subsections (f) and (g) shall be exhausted to the same
> extent as would be required had the action been brought
> under this subchapter.

Subsection (*l*) specifically leaves open the avenue for
plaintiffs to sue based on other substantive laws if the relief
sought was distinct from what is available under the IDEA.  A.W.
v. Jersey City Pub. Schs., 486 F.3d 791, 798 (3d Cir. 2007) ("By
preserving rights and remedies "under the Constitution," section
1415 [(*l*)] does permit plaintiffs to resort to section

1983 for *constitutional* violations, notwithstanding the
similarity of such claims to those stated directly under IDEA.")
(emphasis in original).  Even though Plaintiffs mention
provisions of the IDEA as background for their § 1983 claim,
they cite to the Fourteenth Amendment as the underlying basis.[10]
(ECF 1 at 189).  Courts have held that there is a property
interest in education and that therefore, prior to the
deprivation of such interest, a plaintiff must be provided with
a meaningful opportunity to be heard prior to the deprivation in
order to comport with the Fourteenth Amendment.  Hamilton v.
Radnor Twp., 502 F. Supp. 3d 978, 990 (E.D. Pa. 2020) ("The
Fourteenth Amendment creates a guarantee of fair procedure
whereby an individual can assert that she was deprived of a
life, liberty, or property interest without due process of
law.") (internal quotation marks omitted);  Garcia v. Capistrano
Unified Sch. Dist., 2018 WL 6017009, at *12 (C.D. Cal. Mar. 30,
2018) ("Further, a plaintiff can bring a Section 1983 action
alleging the deprivation of procedural due process in state
special education administrative proceedings.");  K.A. ex rel.
J.A. v. Abington Heights Sch. Dist., 28 F. Supp. 3d 356, 367
(M.D. Pa. 2014) (noting property interest in public education);
Abernathy v. Indiana Univ. of Pennsylvania, 2013 WL 3200519, at

---

[10] For reason that are unclear, Plaintiffs also cite to the
Fourth Amendment without further elaboration.  And such claim
will be dismissed without prejudice.

30

*1 (W.D. Pa. June 18, 2013) (noting the need for a meaningful opportunity to be heard before the deprivation of education); Dommel Properties, LLC v. Jonestown Bank & Tr. Co., 2013 WL 1149265, at *9 (M.D. Pa. Mar. 19, 2013) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner."). Thus, maintaining a separate claim under the Fourteenth Amendment to be vindicated via § 1983 is in accordance with § 1415(*l*) so long as the claim is ripe.[11]

e. Violation of § 504 and the ADA.

The NJDOE also moves to dismiss Count XVII, violation of § 504, and Count XVIII, violation of the ADA. They argue that dismissal of Counts XVII and XVIII is appropriate because "Plaintiffs do not allege that State Defendants excluded J.A. from a service, program or activity because of J.A.'s disability." (ECF 33 at 34). Plaintiffs counter that the State Defendants retaliated against them for seeking to enforce J.A.'s education rights by reassigning her case several times and not enforcing the timing required by law for the progression of her

---

[11] See C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 73 n.13 (3d Cir. 2010) ("As a matter of chronology, a state administrative complaint could not seek relief for a due process violation that had not yet occurred. Thus, any claim for deprivation of procedural due process in the state administrative proceedings cannot be redressed by the remedial provisions of the IDEA; the aggrieved party must file a separate § 1983 action in the District Court, supported by appropriate factual allegations.").

cases.  (ECF 36 at 27).

To state a claim of violation Title II of the ADA or § 504, "a plaintiff must show that he is a qualified individual with a disability; that he was excluded from a service, program, or activity of a public entity; and that he was excluded because of his disability." Disability Rts. New Jersey, Inc. v. Comm'r, New Jersey Dep't of Hum. Servs., 796 F.3d 293, 301 (3d Cir. 2015); Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 288 (3d Cir. 2019) (noting that the substantive standards for both claims are the same).  The parties do not appear to dispute that J.A. is a qualified individual with a disability.  Rather, the crux of the dispute is whether Plaintiffs were deprived of something they otherwise were entitled to as a result of J.A.'s disability.  The complaint clearly outlines the NJDOE and OAL's responsibilities to provide impartial due process hearings and that, for instance, "[u]pon information and belief, ALJ Wilson issued the May 1, 2018 Order out of spite and in retaliation for Plaintiffs asserting objections based on the 45 Day Rule." (ECF 1 at 86).  This, with the rest of the allegations in the complaint, is enough to satisfy the Court that Plaintiffs are entitled to proceed with their ADA and § 504 claims.

Indeed, the Supreme Court has noted that an action may lie for violation of the ADA and § 504 where the facts arise out of an alleged violation of the IDEA.  Fry v. Napoleon Cmty. Sch.,

32

137 S. Ct. 743, 750, 197 L. Ed. 2d 46 (2017) ("[T]he IDEA does not prevent a plaintiff from asserting claims under such laws even if. . . those claims allege the denial of an appropriate public education (much as an IDEA claim would)."). Plaintiffs' complaint alleges that the NJDOE's flawed procedures pervaded the dispute resolution system to the extent that they effectively barred J.A. from receiving the same educational benefits as other children and retaliated against Plaintiffs for trying to assert their rights. (See ECF 1 at 89).

The State Defendants characterize the allegations of violation of § 504 and the ADA as conclusory, focusing on statements like the above-quoted allegations. Plaintiffs certainly could have pled their claims more artfully, neatly tying together how the State Defendants' flawed procedures constituted discrimination or some sort of disparate impact in compact phraseology. But this Court reads the allegations in the complaint as a whole and the allegations read in that light tell a story of due process procedures so deficient that Plaintiffs were not able to place their child in the right educational setting or seek relief without retaliation, a benefit that non-disabled children were readily receiving. Destro v. Hackensack Water Co., 2009 WL 3681903, at *2 (D.N.J. Nov. 2, 2009) ("The Court must consider the Complaint in its entirety and review the allegations as a whole and in context.")

33

Thus, the Court will not dismiss the claims based on § 504 and the ADA.

      f. <u>Whether Federal Preemption Applies.</u>

Plaintiffs assert a count for "federal preemption", contending that there "is a direct conflict between the scheme under federal IDEA law for resolving special education disputes and NJDOE's system under the New Jersey Administrative Code for how New Jersey handles special education disputes as discussed at length in preceding allegations of this Complaint." (ECF 1 at 168.) The State Defendants argue that Plaintiffs' contention that the briefing schedule for motions and the refusal by State Defendants to enforce the 10 day Peremptory Hearing regulation both directly conflict with the IDEA fails because neither conflicts with the IDEA. The State Defendants argue that the IDEA and New Jersey regulations do not provide for guidelines regarding motion practice in due process hearings, and the 10-day rule is not contained in the IDEA. Thus, the State Defendants argue that the IDEA cannot preempt state law on these issues.

The Court finds that any conflicts between the State's procedures as they relate to the IDEA will be more appropriately resolved after discovery regarding those procedures as a whole, and a fuller record is provided upon which this Court may opine on the viability of Plaintiffs' federal preemption count. <u>See</u>,

34

e.g., Virtual Studios v. Couristan, Inc., 2011 WL 1871106, at *3
(D.N.J. 2011) (denying the defendant's argument that the
plaintiff's state law claim was preempted by federal copyright
law because the court was required to perform a qualitative
analysis to make that determination, and finding that it would
be in a far better position to make such a qualitative
assessment once the record in the matter had been more fully
developed, rather solely on the plaintiff's complaint).

      g. Whether Plaintiffs' Claim for Malicious Abuse of
         Process May Proceed.

     The State Defendants contend that Plaintiffs' state law
claim for malicious abuse of process necessarily fails because
it is barred by the Eleventh Amendment.  Plaintiffs argue that
that it is so intertwined with the federal issues in this case
that the Court may exercise supplemental jurisdiction over it.
Plaintiffs miss the mark in making that argument. "[T]he
supplemental jurisdiction statute, 28 U.S.C. § 1367, does not
authorize district courts to exercise jurisdiction over claims
against non-consenting States." Balsam v. Sec'y of New Jersey,
607 F. App'x 177, 183 (3d Cir. 2015).  Further, the Supreme
Court has made clear that the carveout in Ex parte Young, 209
U.S. 123, 159, 28 S. Ct. 441, 454, 52 L. Ed. 714 (1908) that
allows suit against state officials for ongoing violations of
federal law does not extend to claims based on state law.

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106, 104
S. Ct. 900, 911, 79 L. Ed. 2d 67 (1984) ("We conclude
that *Young* and *Edelman* are inapplicable in a suit against state
officials on the basis of state law.")  Thus, the Court will
dismiss Count XX against the State Defendants with prejudice.

> h. Whether Plaintiffs' Legal Error Claims Must be
> Dismissed.

The State Defendants are correct that a pure claim based on
legal error is more appropriately handled as an appeal than as a
separate count.  The provision of the IDEA allowing appeal of
the prior decision is clear that the scope of any appeal of the
underlying action is cabined to what was in the due process
complaint.  20 U.S.C.A. § 1415(h)(2)(A)  ("Any party aggrieved
by the findings and decision made under subsection (f) or (k)
who does not have the right to an appeal under subsection (g),
and any party aggrieved by the findings and decision made under
this subsection, shall have the right to bring a civil action
with respect to the complaint presented pursuant to this
section, which action may be brought in any State court of
competent jurisdiction or in a district court of the United
States, without regard to the amount in controversy.").

Essentially, § 1415(h)(2)(A) makes clear that a party
appealing the result of a due process proceeding must base that
appeal on the underlying complaint filed in that proceeding.  To

be clear, this Court does not hold that Plaintiffs may not separately sue the State Defendants for conduct related to the handling of that proceeding, as they have done here.  Rather, the scope of a substantive appeal does not pertain directly to the conduct of the State Defendants.  Thus, the Court will dismiss Count II.

**CONCLUSION**

For the reasons expressed in this Opinion, the State Defendants' motion to dismiss (ECF 33) will be granted in part and denied in part.

An appropriate Order will be entered.


Date: __March 30, 2022__                    __s/ Noel L. Hillman__
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.